IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITTANY KADE,<br><br>    Plaintiff,<br><br>  v.<br><br>BIZUNEH WORKIE, AHMED A. MOHAMED, NOURREDINE MELIKECHI, and DELAWARE STATE UNIVERSITY,<br><br>    Defendants. | Civil Action No. 16-179-RGA |

### MEMORANDUM OPINION

Defendant Ahmed A. Mohamed is the sole defendant remaining. (D.I. 13). Presently before me is his Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), all claims brought by Plaintiff Brittany Kade against him. (D.I. 10). Those claims are the following: (1) Count I, Intentional Infliction of Emotional Distress; (2) Count II, Assault; (3) Count III, Battery; and (4) Count IX, Section 1983. (D.I. 1-1). The briefing is complete. (D.I. 11; D.I. 14; D.I. 15). I reviewed supplemental letters relating to the § 1983 claim. (D.I. 18; D.I. 19; D.I. 20).

### I.  LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that

1

those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. BACKGROUND

The following allegations are highly relevant. Plaintiff Kade is female and was a student a Delaware State University ("DSU"). (D.I. 1-1 ¶ 1). Defendant Mohamed is male and was employed by Delaware State University as a professor in the chemistry department. (*Id.* ¶ 3). During the spring semester of 2014, Kade was a senior chemistry student who also worked part-time in the chemistry department helping set up laboratories for chemistry professors. (*Id.* ¶ 6). She worked on a senior thesis/capstone project with Mohamed, along with multiple publications

with him. (*Id.* ¶ 7). She worked with Mohamed for approximately two years. (*Id.*). Mohamed was her primary professor and reference. (*Id.* ¶ 17).

On or about February 10, 2014, Kade's car broke down and she asked Mohamed if he would drive her to an autoshop for repairs as the two of them were supposed to meet regarding a project anyway. (*Id.* ¶ 8). During the drive, Mohamed spoke to Kade "about how he missed his wife and how he missed having sex, giving hugs, and kissing women." (*Id.*). He further indicated how "he liked how Ms. Kade looked, dressed, smelled, and wore makeup." (*Id.*). Kade told Mohamed, and he acknowledged, the inappropriateness of his comments. (*Id.*). Later during the drive, Mohamed brought up his loneliness. (*Id.* at 10).

Upon arriving at the autoshop, Kade informed Mohamed that he could leave, but he insisted on remaining until she left in her car. (*Id.* at 11). When Kade stepped out of the car, he stepped out of the car, "put his arm around her, and patted her on the shoulder." (*Id.*). He further indicated that "if she ever needed anything, even outside school, she should let him know." (*Id.*).

Kade and Mohamed traveled in separate vehicles back to DSU. (*Id.* ¶ 12). Kade realized that she left her belongings in Mohamed's office, and returned to his office to get them. (*Id.*). While in his office, Mohamed asked her to sit and talk to him. (*Id.*). Kade thought the conversation would be about her paper. (*Id.*). Instead, Mohamed asked whether Kade had sexual relations with a former student named Patrick who lived with Kade and her husband while Patrick was going through a divorce. (*Id.* ¶ 14). She said she did not because she was married and that Patrick was not her type. (*Id.*). He asked her what her type was. (*Id.*). To diffuse the tension, she said "her husband was tall, dark, and handsome." (*Id.*). He said that he was as well and that she likes his accent. (*Id.*). She asked him to stop. (*Id.*). He said that he really liked

3

Kade and liked being able to talk to her in this fashion. (*Id.*). When Kade stood up to leave this conversation, he "came around the desk and pulled her into a two-arm hug." (*Id.* ¶ 15). He further "turned his face as if to kiss her and held her there." (*Id.*). She pushed him away. (*Id.*).

At some point in time later, Kade had to ask Mohamed where the silver nitrate was located. In response, he "bit his bottom lip and winked at her." (*Id.* ¶ 18).

Some of the injuries Kade alleges she suffered include the following: extreme emotional distress that included being reduced to tears on multiple occasions, humiliation in front of her peers and classmates on multiple occasions, embarrassment by rumors being spread on the DSU campus about her, having to see a therapist, avoidance of the building housing the chemistry department, and interference with her education. (*Id.* ¶ 47).

### III.   DISCUSSION

#### A.   Eleventh Amendment

Defendant Mohamed argues that under a reasonable reading of the complaint, he is sued only in his official capacity and not his individual capacity. (D.I. 11 at 13–14). Because he is sued only in his official capacity, Defendant argues that all claims must be dismissed against him pursuant to the Eleventh Amendment. (*Id.*).

"The Third Circuit employs a course of proceedings test to determine whether a plaintiff in a § 1983 action may proceed with both an official and individual capacity suit when it is unclear what his intentions are from his complaint." *Davis v. Thomas*, 2009 WL 3112318, at *3 (D. Del. Sept. 25, 2009) (internal quotations omitted). "Under this test, the court may examine 'the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability,' and is not limited by the presence or absence of language identifying capacity to sue on the face of the complaint." *Id.* "Factors considered include 'the nature of the plaintiff's claims, requests for compensatory or punitive damages, and

the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity.'" *Id.* "The 'underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.'" *Id.*

Here, as to the nature of plaintiff's claims, Plaintiff is asserting that Defendant engaged in intentional torts against her. (*Id.* ¶¶ 48–52, 53–57, 58–62). This strongly suggests that Plaintiff is suing Defendant in his individual capacity. *See Davis*, 2009 WL 3112318, at *4.

She is requesting punitive damages for these intentional torts and for her § 1983 claim. (*Id.* ¶¶ 52, 57, 62, 95). This also strongly suggests that Plaintiff is suing Defendant in his individual capacity. *See Davis*, 2009 WL 3112318, at *4.

The fact that Plaintiff maintains in her answering brief that she is suing him individually weighs in her favor. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." (citation omitted)).

Defendant has asserted a qualified immunity defense (D.I. 11), which suggests that he was placed on adequate notice of being sued individually. *See id.* ("Notice of personal capacity in turn allows government defendants to avail themselves of the qualified immunity defense.").

Defendant points to language in the complaint, in the context of a *respondeat superior* claim against DSU and in the context of Plaintiff's § 1983 claim where Plaintiff argues that Defendant acted under color of state law by working for DSU, which suggests that Plaintiff is suing Defendant in his official capacity. (D.I. 1-1 ¶¶ 67–69; 92). This weighs in Defendant's favor.

5

Considering all of these factors, I find that Plaintiff is proceeding against Defendant in his individual capacity on all claims. Plaintiff's intention to hold Defendant personally liable is fairly ascertainable. *See Davis v. Thomas*, 2009 WL 3112318, at *3. Defendant's Eleventh Amendment argument is rejected.

### B.     Delaware Workers' Compensation Exclusivity

Defendant argues that Delaware's Workers' Compensation Act bars Plaintiff's battery and assault claims because they arise from the employment relationship.

19 Del. Code § 2304 provides:

> Except as expressly excluded in this chapter and except as to uninsured motorist benefits, underinsured motorist benefits, and personal injury protection benefits, every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

19 Del. C. § 2304. "[T]hose claims that involve a true intent by the employer to injure the employee fall outside of the Workers' Compensation Act and remain separately actionable as common law tort claims." *Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 159 (Del. 2000). To the extent these claims do not arise from the course of employment, Delaware's Workers' Compensation Act does not serve as a bar. *See* 19 Del. C. § 2304. *Cf. Garges v. People's Light & Theater Co.*, 2010 WL 4273335, at *4 (E.D. Pa. Oct. 29, 2010) (holding that the injury must occur during the course of employment for Pennsylvania's Workers' Compensation Act to apply).

Setting aside the issue of whether Defendant has standing to raise Delaware Workers' Compensation Act as a bar, it is plausible that Plaintiff's assault and battery allegations do not arise from her employment. Her allegations focus on actions that are not related to her work. Her part-time job relates to helping set up laboratories for chemistry professors. (D.I. 1-1 ¶ 6). It

is plausible that her job description is limited to that. Based on the allegations of the complaint, it is plausible that her senior thesis/capstone project with Defendant, along with the publications with him, were not part of her job description. (*Id.* ¶ 7). Therefore, the trip to the autoshop and what took place in the office cannot be work-related. Thus, her assault and battery claims are not precluded by Delaware's Workers' Compensation Act.

## C. § 1983

"A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

There is no dispute over whether Defendant was acting under color of state law. (*See* D.I. 11, 14-1 at 20, 15). I analyze whether Plaintiff has adequately pled violations of § 1983 under equal protection, substantive due process, and privileges and immunities. I find that she has as to equal protection, but has not as to substantive due process or privileges and immunities.

### 1. Equal Protection

#### a) Analysis

Plaintiff's theory against Defendant for violation of § 1983 on an equal protection theory is essentially a § 1983 hostile educational environment claim. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) (analyzing gendered comments made by a professor to a student under a "hostile educational environment" framework); *Young v. Pleasant Valley Sch. Dist.*, 601 F. App'x 132, 136 (3d Cir. 2015); *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 701 (4th Cir. 2007) (en banc); *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 780 (S.D. Miss. 2011) ("[T]here is no question that sexual harassment is a deprivation of the right to equal protection and violates the Fourteenth Amendment."). Thus, to survive this motion to dismiss,

7

Plaintiff must sufficiently allege "that the victim subjectively perceived the environment to be hostile or abusive" and "that the environment was objectively hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of, in this case, the victim's educational environment." *Hayut*, 352 F.3d at 745 (internal quotations omitted); *Young v. Pleasant Valley Sch. Dist.*, 601 F. App'x 132, 136 (3d Cir. 2015) (importing the Title VII standard into the equal protection/gender/education context).

"Making a hostility determination in the educational context, as in the employment context, entails examining the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's academic performance." *Hayut*, 352 F.3d at 745 (internal quotations omitted). "While the effect on a victim's psychological well-being is relevant to the subjective component in the analysis, its presence, or absence, is not dispositive on the issue of severity, as 'no single factor is required.'" *Id.* "Finding the harassment pervasive means that the challenged incidents are more than episodic; they must be sufficiently continuous and concerted." *Id.* (internal quotations omitted). "There also must be evidence that the alleged discrimination was carried out because of sex." *Id.* "Generally speaking, this analysis is fact-specific and, therefore, as in this case, is best left for trial." *Id.*

Here, Plaintiff has plausibly alleged that she subjectively found Defendant's conduct hostile or abusive. For example, during the car ride with Defendant, Plaintiff informed him of the inappropriateness of his comments. (D.I. 1-1 ¶ 8). In Defendant's office, Plaintiff asked

8

Defendant to stop what she alleged was an inappropriate conversation. (*Id.* ¶ 12). When Defendant pulled her into a two-arm hug, she pushed him away. (*Id.* ¶ 15).

Plaintiff has sufficiently alleged that the educational environment was objectively hostile and abusive and that it was sufficiently severe or pervasive to alter her educational environment. For example, during the car ride, Defendant acknowledged the inappropriateness of his car ride comments. (*Id.* ¶ 8). When Defendant later brought up his loneliness, a plausible inference in that context was that he wanted to be intimate with Plaintiff. (*Id.* ¶ 10). Outside of the car, it was objectively inappropriate for Defendant to say to Plaintiff that "if she ever needed anything, even outside school, she should let him know," thus hinting at sex. (*Id.* ¶ 11). In this context it was inappropriate for him to "put his arm around her, and pat[] her on the shoulder." (*Id.*). In the office, it was objectively inappropriate for Defendant to ask Plaintiff if she had sexual relations with a former student, ask what her type was, and after being asked to stop, to further say he liked the student and liked being able to talk to the student in that fashion. (*Id.* ¶¶ 12, 14). After Plaintiff communicated her disinterest, it was inappropriate for Defendant to pull her into a two-arm hug and turn his face as if to kiss her. (*Id.* ¶¶ 14–15). Viewing the allegation in the light most favorable to Plaintiff, it was inappropriate for Defendant to bite his bottom lip and wink at her when asked where the silver nitrate was located. (*Id.* ¶ 18). Defendant's overall conduct suggested that he wanted to have sex with Plaintiff even though Plaintiff did not share this desire. It is plausible that Defendant tried to take advantage of his status as professor to Plaintiff. Plaintiff has adequately alleged that this had a sufficiently adverse effect on the terms and conditions of her educational experience and that Defendant's actions occurred because of her gender. (*See* D.I. 1-1 ¶ 47).

9

Defendant argues that the facts and holding in *Johnson v. Galen Health Institutes, Inc.*, 267 F. Supp. 2d 679 (W.D. Ky. 2003) dictate the outcome here. (D.I. 15 at pp. 9–10). First, this case is distinguishable because *Johnson* used a Title IX analysis and not a § 1983 equal protection analysis. *See Johnson*, 267 F. Supp. 2d. at 685–87. Second, to the extent the standards are the same, I think *Johnson* sets too low of a bar for what constitutes a § 1983 equal protection claim and the case is not in accord with the outcomes of *Hayut* or *Chestang*. In *Hayut*, the court found genuine issues of material fact where a professor addressed a student as "Monica," referring to Monica Lewinsky, and articulated no defense for his conduct. 352 F.3d at 745–46. Here, Defendant has also made comments to Plaintiff with "powerful sexual connotations and overtones." *Id.* at 747. In *Chestang*, the court denied a motion to dismiss where the professor made suggestive comments and, on one occasion, rubbed against a student. 820 F. Supp. 2d at 775, 779–81. The facts in *Hayut* and *Chestang* are analogous to those at hand. Defendant's conduct is not, as Defendant suggests, "fairly innocuous." (D.I. 15 at p. 10).

Thus, examining the totality of the circumstances, and viewing them in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged a § 1983 equal protection claim.

### b) Qualified Immunity

"A public official's actions are protected by qualified immunity if s/he can show that the 'offending' conduct did not 'violate clearly established statutory or constitutional rights which a reasonable person would have known.'" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479 (3d Cir. 1990). "The purpose is to protect public officials from liability in situations involving extraordinary circumstances and where they neither knew nor objectively should have known the appropriate legal standard." *Id.* at 1480. "The term 'clearly established' does not necessarily refer to 'commanding precedent' that is 'factually on all-fours with the case at bar,' or that holds the 'very action in question' unlawful." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th

10

Cir. 1994). "Rather, a constitutional right is clearly established if 'in the light of pre-existing law the unlawfulness [is] apparent.'" *Id.* "Put another way, officials must observe 'general, well-developed legal principles.'" *Id.* "It is the defendants' burden to establish that they are entitled to such immunity." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989).

Students have an equal protection right to be free from sexual harassment in the educational context. *See Hayut*, 352 F.3d at 744; *Young*, 601 F. App'x at 136; *Jennings*, 482 F.3d at 701; *Chestang*, 820 F. Supp. 2d at 780. *Cf. Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 481 (D.N.J. 2009) (in the employment context, "The Third Circuit has held that the right to be free from sexual harassment and discrimination 'was well grounded in law and widely known to the public by 1986'"); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) ("The 'contours' of a student's substantive due process right to be free from sexual abuse and violations of her bodily integrity were clearly established in 1987."). "The unlawfulness of sexual harassment by a state actor was sufficiently apparent . . . to put a reasonable official on notice that sexual harassment violates that right." *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 781 (S.D. Miss. 2011).

Thus, setting aside the issue as to whether Defendant could even assert the defense of qualified immunity, Plaintiff's constitutional right is clearly established in light of the established law. The unlawfulness of Defendant's alleged actions is sufficiently apparent. *See id.* I am not persuaded by Defendant's argument that the pre-existing law is not clearly established as to the specific facts at hand because the legal standard does not have to be "factually on all-fours with the case at bar." *Taylor Indep. Sch. Dist.*, 15 F.3d at 455. Plaintiff has stated a § 1983 equal protection claim.

    **2.**    **Substantive Due Process**

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality opinion). "Every violation of a person's bodily integrity is an invasion of his or her liberty." *Washington v. Harper*, 494 U.S. 210, 237 (1990). There are both "physical and intellectual" dimensions to that liberty. *Id.* "The invasion is particularly intrusive if it creates a substantial risk of permanent injury and premature death." *Id.*

Here, Plaintiff fails to plausibly allege that her right to bodily integrity has been violated by Defendant. The facts as alleged here are similar to those in *Chestang v. Alcorn State University*, 820 F. Supp. 2d 772 (S.D. Miss. 2011). There, "Chestang allege[d], essentially, unwanted sexual advances by Simpson. Those unwanted advances allegedly took the form of several telephone calls and in-person conversations as well as one incident when Simpson 'rubbed against [Chestang's] body.'" *Chestang*, 820 F. Supp. 2d at 779–80. The court found that this did not amount to a substantive due process violation. *Id.* at 780. Here, the alleged invasion is similar to that in *Chestang* and warrants dismissal. *See id.* ("Though a substantive due process right to bodily integrity clearly exists, . . . only the most egregious misconduct violates that right.").

### 3. Privileges and Immunities

Plaintiff does not dispute dismissal of her § 1983 action on a privileges and immunities theory. (*See generally* D.I. 14-1). Thus, Defendant's motion to dismiss is granted as to this theory.

### D. Intentional Infliction of Emotional Distress

Plaintiff has stated a claim for intentional infliction of emotional distress. "A claim for intentional infliction of emotional distress (IIED) requires proof that [Defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel.*

12

*DeSombre v. State, Dep't of Safety & Homeland Sec., Div. of Delaware State Police*, 69 A.3d 360, 367 (Del. 2013).

### 1. Extreme or Outrageous Conduct

"Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community.'" *Id.* "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]" *Id.* "If reasonable minds may differ, the question of whether the conduct is extreme and outrageous is for the jury." *Id.* "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 368.

My conclusion that Plaintiff plausibly alleged that her educational environment was objectively hostile and abusive is directly relevant here. Plaintiff has sufficiently alleged that Defendant's conduct was extreme and outrageous, particularly in light of the fact that he is Plaintiff's professor and is in a position of authority. *See id.* at 367–68. Defendant's alleged conduct amounts to more than "mere insults, indignities, or annoyances." *Id.* at 368.

### 2. Intentionally or Recklessly

Defendant's conduct has to "intentionally or recklessly" cause severe emotional distress to Plaintiff. *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 818 (Del. Super. Ct. 2009).

Defendants' conduct, as alleged, recklessly caused severe emotional distress to Plaintiff at the minimum. For example, he acknowledged the inappropriateness of his comments during the car ride. (D.I. 1-1 ¶ 8). In his office, he pulled Plaintiff into a two-arm hug despite Plaintiff apparently trying to get away from an inappropriate conversation. (*Id.* ¶¶ 14–15).

### 3. Causes Severe Emotional Distress

13

Plaintiff has plausibly alleged that the conduct caused her severe emotional distress. (*Id.* ¶ 47). Plaintiff has stated a claim for intentional infliction of emotional distress.

### E. Exhaustion of Title VII Administrative Remedies

Plaintiff does not assert any Title VII claims. (D.I. 1-1). Defendant argues that Plaintiff is an employee of DSU and that she is limited to bringing Title VII claims for any allegations of discrimination on the basis of sex for federally funded educational institutions. (D.I. 11 at 15). Defendant further argues that, because Plaintiff was subject to Title VII and did not exhaust her administrative remedies through the EEOC, all of her claims must fail. (D.I. 11 at 14–16).

Without deciding whether Defendant has standing to assert the defense of Title VII exhaustion, I address whether Plaintiff's claims are precluded by Title VII such that exhaustion is even required.

Plaintiff's § 1983 equal protection claim is not precluded by Title VII. *See Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) ("However, that principle does not help the County here because plaintiff's Section 1983 claim is not predicated upon a violation of Title VII, but rather upon a violation of the First and Fourteenth Amendments. If a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application."); *Owens v. Rush*, 654 F.2d 1370, 1380 (10th Cir. 1981) ("Title VII did not impair in any way [plaintiff's] independent, substantive rights created by the First and Fourteenth Amendments . . . . '[S]ubstantive rights conferred in the 19th Century were not withdrawn, *sub silentio*, by the subsequent passage of the modern statutes.'"); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) ("Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute . . . the claim based on the other source is independent of the Title VII claim, and the plaintiff may

14

seek the remedies provided by § 1983 in addition to those created by Title VII."). *Cf. Meade v. Merchants Fast Motorline, Inc.*, 820 F.2d 1124, 1127 (10th Cir. 1987) ("[P]laintiff may properly pursue his cause of action under § 1981 for private employment discrimination despite the applicability of Title VII to the same conduct").

Defendant argues for the application of *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), to § 1983 equal protection claims. It does not apply. *Lakoski* only relates to the effect of Title VII on Title IX and § 1983 Title IX claims. 66 F.3d at 758 ("Title IX prohibits the same employment practices proscribed by Title VII [and thus] individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983."). Plaintiff is not asserting any Title IX or § 1983 Title IX claims, only a § 1983 equal protection claim. This is critical. *Lakoski* makes explicitly clear that Title VII does not foreclose § 1983 equal protection claims. 66 F.3d at 755 ("Congress did not intend Title VII to preempt § 1983 claims based upon rights already held by individuals, such as constitutional rights."). Plaintiff's § 1983 equal protection claim is not precluded by Title VII. *See Starrett*, 876 F.2d at 814.

Defendant also asserts that Plaintiff's state law claims should also be dismissed on the grounds that Plaintiff failed to exhaust Title VII remedies. (D.I. 11 at 14, 16). Setting aside the issue of whether this is even a Title VII case, Defendant's argument implies that Title VII would preempt Plaintiff's state law claims. Title VII does not preempt Plaintiff's state law claims. *See* 42 U.S.C. 2000e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or

15

permit the doing of any act which would be an unlawful employment practice under this subchapter.").

Thus, Defendant's Title VII argument fails.[1]

## IV.   CONCLUSION

A separate order will be entered.

February 27, 2017

*[signature]*
United States District Judge

---

[1] Defendant raises additional issues in his supplemental briefing responding to my Oral Order (D.I. 17) that (1) were not raised in his opening brief and (2) are outside of the scope of my Oral Order. (*See* D.I. 19). Thus, I do not consider them. *See* Local Rule 7.1.3(c)(2); *Chambers v. Doe*, 453 F. Supp. 2d 858, 861 n.3 (D. Del. Sept. 26, 2006).

16